NEW YORK,
May, 1827.

Jackson
v.
Harsen.

JACKSON, *ex dem.* WEBBER and others, *against* HARSEN and another.

EJECTMENT for a lot of ground in the city of New York; tried at the New York circuit, December 9th, 1825, before EDWARDS, C. Judge.

At the trial, the plaintiff took various exceptions to the decisions and charge of the judge; on which (the verdict being for the defendants) a motion was now made for a new trial, in behalf of the plaintiff. The grounds of the motion were brought before this court by a bill of exceptions. They were various; but as the cause turned upon the single *question of adverse possession, it is deemed unnecessary to notice the other points made by counsel. The facts relating to the single point decided, will be found stated in the opinion of the court. Upon that point,

*A. Burr & E. Williams,* for the plaintiff, cited 1 Caines, 395; 12 John. 368; Bull. N. P. 104; 4 John. 202, 211, 230; 3 John. Cas. 124; 9 John. 163; 16 id. 293.

*P. W. Radcliff & S. M. Hopkins,* contra, cited 9 John. 180; 10 id. 356; 18 id. 44, 355; 1 Cowen, 285, 609; 5 id. 100; 1 Munf. 454; 2 Bay, 343.

*Curia, per* WOODWORTH, J. In the view I have taken of this cause, it is not necessary to discuss a number of questions raised on the argument. I am of opinion that the plaintiff is barred by reason of a valid adverse possession in the defendants. It appears that Arnaut Webber, from whom the lessors of the plaintiff deduced title, as his heirs at law, on the 1st of May, 1686, conveyed to Lawrens Colvelt all the right, title and interest which he had by virtue of a transfer from Abraham Lambertson Mole, to a parcel of land in the city of New York, including the pre-

Where the relation of landlord and tenant exists, a conveyance by the latter of the demised premises, cannot operate as the basis of an adverse possession, so as to bar the former of his [*324] ejectment; whether the grantee know of the demise or not. But this rule means the conventional relation of landlord and tenant, where some rent or return is in fact reserved to the former; not a relation arising from mere operation of law; as where one makes a grant, and by the omission of the technical word *heirs,* an estate for life, only, passes. In such case, after the death of the tenant for life, an adverse possession may commence running in favor of those who enter and claim in fee under him, which, af ter 25 years, will bar all claim of the reversioner and his heirs.

NEW YORK, mises in question. The deed from Mole to Webber con-
May, 1827. veyed the premises in fee. From the words used in the
Jackson. deed to Colvelt, the intent evidently appears to have been,
v. to convey a like estate; but by omitting the usual words
Harson of inheritance, it is contended that only a life estate was
granted. For the purpose of this decision, it will be as-
sumed that Colvelt acquired no more than a life estate;
and if so, the question is, whether the right of the rever-
sioner and his heirs, is barred by lapse of time. Colvelt,
by deed poll, conveyed in fee simple to William· Merritt;
the latter, on the 10th of May, 1698, granted, in like man-
ner, to William Janeway, with full covenants. The title
of Janeway, in 1731, became vested in Christopher Bancker.
In 1747, a partition between Bancker and others was made
by deed, whereby the premises in question were set apart,
and conveyed in severalty to John· Roosevelt. From him
[*325]       they passed by will to his son, Cornelius Roosevelt. *The
latter, by will, dated the 11th of February, 1771, autho-
rized his executors to convey. On the· 22d of July, 1774,
they granted the premises to Johannes Becker, who, on the
19th of August, 1783, conveyed to John ·Peter Ritter. A
deed of partition, dated April 30th, 1814, between the
children and heirs at law of· Ritter, was executed; by
which the premises were assigned to Joanna, the wife of
Harsen, the defendant. On the 18th of May, 1814, Harsen
and wife, for the consideration· of $20,000, conveyed· to
Jonas Mapes, who, the next day, re-conveyed to Harsen.
Possession followed these conveyances, with claim of title.

On these facts, was it competent for the defendants to
set up an adverse possession to bar the right of the plaintiff?
It is contended by the plaintiff, that the entry of· tenant
for life and his grantee, cannot form the basis of an adverse
title, or adverse possession.

The law seems to·be well settled, that when the relation
of landlord and tenant is established, it attaches to all who
may succeed to the possession, through or under the tenant,
either immediately or remotely. This was so held in *Jack-
son* v. *Davis*, (5 Cowen, 129.) The doctrine is supported
in numerous cases. (2 T. R. 53. 1 id. 760, note. 1

Caines, 444. 2 John. Cas. 223. 3 John. Rep. 499, 223.)[1]

Where a tenancy exists, a purchaser who enters under an absolute conveyance in fee, from the tenant, is considered as entering as the tenant of the lessor; although he may not have known that his grantor held or derived his possession from the lessor. (5 Cowen, 130.) Can this be called a tenancy of that description? I have already observed, that the conveyance of Arnaut Webber to Colvelt was intended as a grant in fee. It is not so, merely by the omission of certain technical words, held necessary to constitute that estate. No lease of the premises was intended. No rents are reserved, no services to be rendered, or stipulations to be performed by the grantee. When speaking of the relation of landlord and tenant, what is understood? *Woodfall, in his treatise, (chap. 1, sec. 1,) has [*326] accurately defined the nature of this relation. He says, " a lease is a contract for the possession and profits of lands and tenements, on the one side, and a recompense of rent, or other income on the other; or it is a conveyance to a person for life, or years, or at will, in consideration of a return of rent or other recompense. The person letting the land, is called the landlord; and the party to whom the lease is made, the tenant." (2 Bacon, 558.) In 2 Blackstone's Com. 120, the author observes, that " estates for life expressly created by deed or grant, (which alone are properly conventional,) are, where a lease is made to a man, to hold for the term of his own life, or that of any other person; in any of which cases he is styled tenant for life. They are held by such conventional rents and services, as the lord or lessor, and his tenant or lessee have agreed on." He further observes, that " estates for life may be created, not only by the expressions before mentioned, but also by a general grant without defining or limiting any specific estate, as if one grants to A. B. the manor of Dale. This makes him tenant for life." The grant here, if for

[1] See Waterman's Am. Ch. Dig. tit. *Landlord and Tenant;* N. Y. Dig. tit. *Landlord and Tenant.*

life, is of the latter description. It is created by operation of law. No relation of landlord and tenant was contemplated. There are no covenants, conditions, rents or services, to bind the grantee to the grantor, so as to constitute the intimate relation that exists between landlord and tenant. There is no reason, therefore, in the nature of the case, why the restrictions and disabilities that a tenant is under to his landlord, should be applied, when the grantor conveys simply an estate for life. The established doctrine that a tenant cannot set up a title against his landlord by reason of the privity of estate, does not apply. If A. conveys to B., absolutely, an estate for life without condition, he, it is true, is tenant for life; for that is the technical description of that species of estate; but he is not a tenant to the grantor; nor is the grantor the landlord within the meaning of these terms. There are no reciprocal or other duties between them to be performed. The grantee has

[*327]

all the rights incident to *an estate for life, and may exercise them without the let or hindrance of the grantor. He is not within the principle that precludes the tenant from setting up a defense against his landlord; but, in this respect, stands on the same ground, as if the purchase had been in fee. It is therefore, a mistake, to suppose that this case excludes the right of setting up an adverse possession, because the defendants derive title from Colvelt; he never having been the tenant of Arnaut Webber. So long as the life estate continued, the possession of the tenant for life, was the possession of him in remainder or reversion; and during its continuance, there could be no adverse possession. When that ceased, the right of entry accrued. If, after the termination of the life estate, the reversioner permits the representatives of the tenant for life to hold, claiming as their own, beyond the time limited for bringing actions, the right to recover is gone. I consider this proposition as settled law.

*When* the life estate ended, rests on presumption. The utmost period of the ordinary existence of man, may be allowed for its continuance. After that, there will remain more than half a century, during which the defendants, and

those from whom they derive title, have been in the actual occupancy of the premises, claiming under paper title, and making transfers for valuable considerations. Whatever may have been the right, originally, of the ancestor of the lessor of the plaintiff, it is barred by an adverse possession of more than 25 years. The motion for a new trial must be denied.

