HEZEKIAH H. REED, Administrator of A. CRAIGIN, *vs.* D. H. SHEPLEY and PELETIAH CHARLES.

Same Plaintiff *vs.* D. H. SHEPLEY and ASA BALDWIN.

A mortgagor cannot dispute the title of the mortgagee.

One holding land under another cannot set up an adverse claim until he has first surrendered up the possession; and all who claim under him are tenants subject to the same rule, whether they knew of that relationship or not.

Actual possession is sufficient to authorise a recovery against a stranger, showing no title.

An action of ejectment may be maintained on a mortgage, though the statute of limitations has run on the debt.

The widow of a mortgagee is not entitled to dower: his estate passes to the executor.

This was ejectment for the whole of Lot No. 16, Range 6, and the east half of Lot No. 16, in Range 7, in Lowell.   Seisin and ouster, Oct. 29th, 1832.

The plaintiff gave in evidence, without objection, his letter of administration, granted by the court of probate for the district of Orleans, October 27th, 1832.   He also read in evidence the following conveyances, which were duly acknowledged and recorded, viz: a deed from said Andrew Craigin to Ebenezer Rust, dated November 26th, 1818, of Lot No. 16 in Range 6, and a mortgage of the same lot from said Ebenezer Rust to said Craigin, dated December 1st, 1818, conditioned for the payment of a note of $200, in six years, and six notes of $12, each payable annually in succession, which notes were also produced.—Also a deed from Craigin to John Rust, dated

ORLEANS,
April,
1834.

Reed, Adm'r of
Craigin
vs.
Shepley et al.

June 7th, 1819, of the east half of said Lot No. 16, in Range 7 ; and a mortgage deed of the same date, of the land last aforesaid from said John Rust to said Craigin, conditioned for the payment of a note of $100, payable in six years, and six notes of $6 each, payable annually in succession, which notes were also produced.—Also a lease for the term of fifteen years, from defendant, Shepley, to William W. Rust, of all the lands aforesaid, dated March 21st, 1829—a quit-claim deed from said William W. Rust, to Laban Sprague, of said Lot No. 16, in Range 6, dated January 29th, 1830, and a like deed, from the same to the same, of the east half of said Lot No. 16, in Range 7, dated April 30th, 1830 ; and a quit-claim deed of all these lands from said Sprague to defendant, Charles, dated January 16th, 1832.

The plaintiff then proved that said Ebenezer Rust and his father, the said John Rust, commenced improvements upon their respective purchases aforesaid, and erected a house together, on or very near the dividing line between them, about the year 1820, and continued to live there and to extend their respective improvements aforesaid, until the said Ebenezer died, unmarried, about twelve years ago; after which, the said John Rust continued to live there, and carried on the improvements upon both lots.

Evidence was then given tending to show that at the time of the lease from defendant, Shepley, to said William W. Rust, the latter was living with his father, John Rust, upon said lands.— That he took the lease with the knowledge and at the request of said John Rust.—That John and said William continued to live there together from the taking until said conveyance to said Sprague, and that said John was interested and concerned in said conveyance, though he considered himself as working on the land under said William, after the taking of said lease.

The defendants offered in evidence a vendue deed of the lands in question, from Abel Curtis, collector of a road tax, to defendant, Shepley, dated March 21st, 1829, and another from Otis Leland, collector of a road tax, to said Shepley, dated August 24th, 1832 ; and in support of said deeds, they offered the acts of the legislature, granting said taxes, in the years 1825 and 1828, with the records from the town clerk's office, and those of the county court, in relation to the proceedings under said acts, together with the original grant or grants of Kellyvale, and the surveying and allotment thereof.

ORLEANS,
April,
1834.

Reed, Adm'r of
Craigin
vs.
Shepley et al.

To the proceedings under said acts of the legislature, as the same appeared on the records aforesaid, sundry objections were taken, which the defendant offered to obviate and supply so far as could be done by evidence out of, and apart from said records. But the court being of opinion that objections appeared in said records which could not legally be aided and supplied by extrinsic evidence, rejected said two vendue deeds, with all the accompanying evidence.

The court charged the jury, that if they should find the evidence that said John Rust was on said premises, and occupying the same, at the time when said William W. Rust took the lease under Shepley, and that said lease was taken with the countenance and approbation of said John, and that said John had concurred in the subsequent conveyance to Sprague, by receiving part of the consideration to himself, or by consenting to the same, and yielding the possession or leaving the land in consequence thereof; the plaintiff was entitled to recover all the land sued for; but if they should find the lease and deed executed, and the possession passed to Sprague, without such privity and concurrence of said John, then their verdict should be for defendants. A verdict was returned for the plaintiff.

To the several decisions and charge, the defendants excepted. Exceptions allowed, and passed to supreme court.

The objections to the vendue, as far as decided, will appear in the opinion of the court.

*Argument for defendants.*—1. The plaintiff does not show a title to the land in Craigin, and the defendants are not tenants, so as to be estopped from contesting the title. They derive no title from Craigin, never have acknowledged his title, but enter and claim by adverse title.

2. Neither John or William claim under Ebenezer. No administration of Ebenezer's estate, and without this, John could not hold, recover or convey.

3. It does not appear that Shepley or Charles had any knowledge that John had any part or interest in the conveyance from William to Sprague. They cannot therefore be affected by it.

4. The defendants held under a vendue deed, adverse and independent of the plaintiff, and there is no breach of trust or violation of duty in the defendants toward Craigin.

ORLEANS,
*April,*
1834.

Reed, Adm'r of
Craigin
*vs.*
Shepley et al.

5. If John was satisfied Craigin had no title, he was not bound to hold out against Shepley. He had a right to aban- don and desire William to purchase a title. This was no injury to Craigin, who died in 1819. There was no use in Shepley's bringing suit for possession, when John was willing to abandon without.

6. Craigin had long since abandoned claim to this land. It is a stale claim—he and his heirs have long ceased to pay taxes, or enforce his debts from purchasers on their mortgages, and plaintiff ought not to be countenanced in speculating on such stale claims. It should have been holden as quieted.

*Argument for plaintiff.*—The charge of the judge and find- ing of the jury were correct: for if the various facts existed which the jury were instructed to find, there was no *disseisin* or *ouster* of the mortgagee, and the possession of John Rust, who was the mortgage tenant, passed to the defendants, accom- panied by his (Rust's) relation to the mortgage landlord.— Adams' Eject. 57.—N. H. Rep. 31.

" A mortgagor in possession, after covenant broken, is tenant at will of the mortgagee."—4 Kent. Sec. 149.—2 Swift. Dig. 165.—3 Mass. R. 559.

" Where the relation of landlord and tenant is once estab- lished, it attaches to all who may succeed to the possession through or under the tenant, either immediately or remotely." —1 Term Rep. 760, note.—5 Cowen's Rep. 129.—2 Term Rep. 53.—3 John. Rep. 499.—1 Caine's Cases, 394.—7 Cowen's Rep. 637.

The possession of a tenant at will, for ever so many years, is no disseisin : there must be a *tortious ouster* to make the pos- session adverse.—Buller's N. P. 24.

But notwithstanding a mortgagor is tenant at will to the mortgagee, yet the interest of the mortgagee, though he has the legal seisin, is only a chattel interest : the fee is in the mortgagor, with all its concomitant qualities, till entry or fore- closure by the mortgagee.—4 Kent. Sec. 149.—2 Swift. Dig. 165.—1 Conn. Rep. 603—2 *Ib.* 600—4 *Ib.* 235 and 421.— 11 John Rep. 534.—7 John. Rep. 278—15 *Ib.* 290.

This anomalous character of a mortgage title, admits of the mortgagor's exercising entire control of the estate, till foreclo- sure : he can convey, lease or charge it, with the payment of rent to others, and consent to others charging it with rent,

ORLEANS,
April,
1834.

Reed, Adm'r of
Craigin
vs.
Shepley et al.

which will bind him; but he and all others who become connected with his title and possession, take them subject to the legal seisin and incumbrance of the mortgagee.

Whatever titles a tenant at will may connect with his possession, or whatever relations he may create with others, they are all subservient and subordinate to the paramount rights and title of the landlord.—Bul. N. P. 24.—1 Caine's Cases, 394. 3 John. R. 499.—5 Cowen's Rep. 129—7 *Ib.* 637.

Hence, Shepley having engrafted his lease on to the mortgagee's legal seisin in John Rust through William W. Rust, by the request and consent of John, and Wm. W. Rust (the conduit) having transmitted the lease to the assignee, Sprague, who took also John Rust's possession, with his approbation and consent, the seisin of the mortgagor passed also to him, and through him to the defendant, Charles; and though the relation of landlord and tenant was in the process created between the defendants, yet all their rights and title to the premises in question, originated in and continued subordinate to the paramount title of the mortgagee, who was in no instance ousted of his legal seisin.

But the charge of the judge and the finding of the jury, were correct in another view of the case. If the jury find that the lease from Shepley to Wm. W. Rust was taken with the approbation of John Rust, the mortgagor, and the possession delivered over to Sprague by him and with his consent, they were authorized to find the verdict they did, upon the evidence of a *collusion* between the mortgagor, Rust, his son and Shepley to work a dissiezin of the mortgagee.

Collusion with a tenant, never works a disseisin of the landlord, but makes the parties to it, who succeed to the possession, and all holding under or from them, sustain the same relation to the landlord, that the original tenant did; (4 John. Rep. 211,) and our statute (p. 84, § 88) establishes the same principle.

As to the exception taken to the decision of the county court, for excluding the vendue records, presented by the defendants at the trial.

If the foregoing views are correct, as to the relation the defendants sustain to the plaintiff, it follows, that the defendants could not legally be permitted to set up any title, either subsisting in themselves, or outstanding in another, in defence of the plaintiff's action.

ORLEANS,
*April,*
1834.

Reed, Adm'r of
Craigin,
*vs.*
Shepley et al.

In 3 John. Rep. 499, it is decided, that no person who has acknowledged his tenancy to another by parol, nor any person purchasing from or holding under him, can dispute the title of the landlord, although the acknowledged landlord had no title, and the person making the acknowledgement of tenancy, had purchased in by deed a title from a stranger; and that any title previously held or subsequently purchased in by the tenant, is merged in, and enures to the benefit of the landlord. The same principle is decided in 4 John. Rep. 211 and 230.—4 Cowen's Rep. 587—5 *Ib.* 130—7 *Ib.* 637.—Adams Eject. 59, and note.

But the vendue records were properly excluded for the reason assigned by the county court. They were irregular and void.

The opinion of the court was delivered by

COLLAMER, J.—Mortgagors are estopped to deny the title they have created in the mortgagee. When any part of the purchase money is due, the mortgagor becomes, *sub modo,* tenant at will to the mortgagee, and as tenant, is not permitted to deny his landlord's title. When Ebenezer died, his estate, under our statute, passed by·descent to his father, John, who took possession. This possession had no character adverse to Craigin. A possession always enures to the legal right of the possessor, and so Craigin could not have treated John as a wrong doer. John was thus in possession of both lots as tenant to Craigin. If a tenant wishes to purchase in an outstanding title, or set up one himself, adverse to his landlord, he must first surrender up the possession to the landlord, and so fairly end the relationship between them. He is not permitted to retain the possession he has acquired under the landlord, and pervert it to a new purpose, hostile to him. All who, in any way, directly or indirectly, obtain this possession of the tenant, by purchase or consent, taking his improvements, are tenants in his place; sustaining all the relationships and responsibilities resting on him in that capacity, whether informed of this or not. This was fully decided in the case *Bowker* vs. *Walker,* 1 Vt. Rep. —. The court correctly left to the jury the question, whether such was the character of the lease to Williams, and the conveyance to Sprague; and Charles, deriving title from Sprague, has the same character as to tenancy.

As to the defendant, Shepley, he is yet a stranger as to title, and not tenant; and the plaintiff's being in possession by his

Orleans,
April,
1834.

Reed, Adm'r of
Craigin,
vs.
Shepley et al.

tenant is sufficient to entitle him to recover against a stranger, until he shows a better title. All then seems to depend on the goodness of the vendue deed to Shepley.

In relation to the vendue, it is a title, *stricti juris*, and it has long been decided, that strict compliance with the statute must be shown by him who sets up such title. The recovery of the land is in the nature of a forfeiture, and all the legal prerequisites conditions precedent, to be strictly and literally complied with. Among other objections to the proceedings, is this: The statute assessed a tax of four cents on each acre. By the return of the proceedings on the record, it distinctly appears, that lots of land, and among them the lots now in question, are stated to contain one hundred acres each, and assessed three dollars and seventy-six cents. It is suggested in argument, that this, being too small, cannot be complained of by the owner; but that does not show it a tax assessed under the statute. Such an assessment *was not authorized* by the law any more than a tax of one cent on the acre. Such an assessment cannot be received under the act laying a four cent tax. It appears the defendants offered to prove by parol, that, *though it appears by the record* that the lots contained one hundred acres each, yet in fact they contained less, which was known to the committee and collector, and therefore the assessment was made accordingly. This evidence was rejected by the court; and we think was correctly rejected. The statute clearly contemplates, that the whole should *appear of record*. To admit such proof, would permit it to rest in parol, in part or in whole. If the lots contained less, it was entirely easy so to put them down in the proceedings. Again, this testimony directly *contradicts* the record, as much as it would to alter the number or range by parol, and so to fix the sale on a different lot.

Much has been said in the argument of this being a stale claim, long since abandoned by Craigin, and now asserted on a speculation; and insisting that it should, in some way, be treated as quieted. It does not appear that the attention of the court below was called to such a point, nor does the case show any sufficient evidence to lay the foundation for any such charge to the jury. The only course would be, to put it to the jury, from the lapse of time and other circumstances, to presume that the debt, for which the mortgages were given, had been paid, or that Craigin had released. In the case of *Jackson ex. dem. Sackett* vs. *Sackett et Raymond*, 7 Wendall, 94, it was

holden, that when the statute of limitation had run on the debt, a presumption of payment arose, and the mortgage given for its security could not be enforced. By such a principle, the plaintiff would be barred in this case; but this court have, before now, refused to adopt that doctrine. Our statute of limitation in ejectment is expressly fourteen years after action accrues, which, in this case, was on one of the notes becoming due. The time had not elapsed at the commencement of this suit. It has been holden, when persons, who were not parties to the contract which created the relationship of landlord and tenant, or informed thereof, come in possession of the land, claiming in their own right, and ostensibly asserting said right, and the landlord knowingly acquiesces therein for a term as long as the statute of limitation, he has been holden as quieted and barred.

ORLEANS, April, 1834.

Reed, Adm'r of Craigin, vs. Shepley et al.

But in this case nothing resembling this took place until 1819. The testimony presented no such state of circumstances as would have authorized any such decision as the counsel for the defendants seem now to desire.

The case against Shepley and Baldwin is precisely the same in its features as that against Charles, except that Shepley shows a deed from the widow of Craigin, there being no children; and insists that that gives him an undivided interest in the land. Craigin was a mortgagee. This was a chattel interest. It passes to the executor or administrator as incident to the debt, and is afterwards holden by testament or administration, not by descent, and the widow is not entitled to dower until foreclosure.

Judgment affirmed.

*Thomas Reed and Peck for plaintiff.*
*Bell and Cushman for defendants.*