Williams et al. vs. Garrison.

JOHN B. WILLIAMS et al., plaintiffs in error, vs. LOVICK P. GARRISON, defendant in error.

[1.] When the allegations are stated feebly in the bill, and denied strongly in the answer, the injunction ought, in general, to be dissolved.

[2.] Although the relation of landlord and tenant prevents the tenant from disputing the landlord's title, yet it does not prevent him from buying up a title, to be asserted after the termination of the tenancy and the redelivery of the land.

In Equity, in Polk Superior Court. Decision by Judge HAMMOND, April, 1859.

This was a bill filed by Lovick P. Garrison, against John B. Williams, Henry M. Williams, and Edward D. Chisholm, and alleges in substance, as follows:

That in the year 1852, George M. Garrison, the brother of complainant, being largely indebted, probably insolvent, and being desirous of selling the tract of land owned by him, and upon which he resided, to raise money to pay his debts, sold the same to one Joseph Taylor, one of his creditors, and also representing other creditors, in payment and satisfaction of said debt. That complainant, with a view of assisting his brother in making this arrangement, and to induce Taylor to take the land, agreed to take the land from him, Taylor, at the same price that he was to have it at; the price being $1,201 75, with the verbal understanding, that complainant would not be called on or required to pay the purchase money until he could sell the place. Under this arrangement, Taylor purchased said land and took a deed therefor from George M. Garrison, and executed to complainant his bond for titles, and took complainant's notes for the purchase money. That complainant afterwards purchased another lot of land adjoining the settlement. Afterwards, in December, 1853, complainant sold the land to John

B. Williams for $1,500, $750 to be paid 25th December, 1853, and $750, to be paid 25th December, 1854, and took complainant's bond for titles, and entered into possession of the premises, and paid the first note at its maturity. That afterwards, ascertaining that there was a defect in the title to one of the lots, number twenty, said Williams filed his bill in equity, to restrain complainant from trading the note which remained unpaid; and complainant afterwards, having sued Williams on said note, he amended his bill to enjoin said action. Pending this controversy, and in settlement of the same, complainant and said Williams rescinded said trade; complainant delivering up the unpaid note and refunding that part of the purchase money which he had received, and Williams delivering up the bond for titles executed to him by complainant, but agreeing to remain on the premises as the tenant of complainant.

That at the time said settlement was thus made between complainant and said Williams, he had ascertained the person who had the title to said lot, number twenty, to wit, one Flournoy, and that said John B. Williams, confederating with his son, Henry Williams, and Edward D. Chisholm, purchased said lot from Flournoy, for a very small amount, and had the titles executed to said Henry Williams. And that in furtherance and consummation of this arrangement to defraud complainant, an action of ejectment was instituted by said Henry, against said John B. Williams, for the recovery of said lot, and that complainant came in and was made a party defendant. The bill prays that said action of ejectment be enjoined, and that upon the payment by complainant to said John B. Williams of the amount he paid Flournoy for said lot, that he be ordered and decreed to convey the same to complainant.

The defendants answered the bill, and moved to dissolve the injunction, upon the ground that all the equity had been fully denied and sworn off.

The Court overruled the motion and retained the injunction, and counsel for defendants excepted.

CHISHOLM & WADDELL, for plaintiffs in error.

FIELDER & BROYLES, *contra.*

*By the Court.*—BENNING J. delivering the opinion.

Did the Court err in overruling the motion to dissolve the injunction? We think so.

We think that if there was any equity in the bill, it was very fully sworn off, by the answer.

The bill contains this statement; "Your orator does not know of his own knowledge, whether the knowledge of the ownership of said Flournoy, came to said Williams, before, or after, said compromise, but believes and charges, that it was before." This is an allegation essential to the equity of the bill; and it is in a very weak form. It is put on mere belief, and no reason is assigned for the belief.

It is most positively denied by the answer. The answer says, that " he," (John B. Williams,) never did ascertain the true owner thereof, until after the said settlement of said suit between complainant and said John B., and, that at the time said settlement and compromise was so made, the said John B. was ignorant of the ownership of said lot." In another place, the answer says: " These defendants most expressly, and positively and emphatically deny, that they, or either of them knew anything whatever of the ownership of said lot, number twenty, before, or at the time of the settlement and compromise aforesaid, and that it could be bought for $75, or any other sum, large or small. Nor did they, or either of them, know of the existence of any such

man in the world, as John Flournoy, at the time, or before, the said compromise was entered into."

The answer goes on to say, in still another place; " that, after said compromise, the said John B. ascertained from a man by the name of Maund, that he, Maund, knew the owner of said lot of land, and that said lot could be had."

[1.] In these parts of the answer, there is a full, particular, and positive, denial of the allegation of the bill, and that allegation itself, was, as we have seen, but weak.  And we think, that as a general rule, when the equity-giving allegations of a bill, are stated weakly, and denied strongly, the injunction granted on those allegations, ought to be dissolved. In such a case, there is no probability, that there exists evidence, to overcome the answer.   Why then should the injunction be retained ?

It was argued for the defendant in error, that at the time of the purchase of the lot by Williams from Flournoy, Williams was holding the land, as the complainant's tenant; and, that the relation of landlord and tenant is such, that Williams was not at liberty to purchase the land except for his landlord.

[2.] The relation of landlord and tenant is such, that it, in most cases, deprives the tenant of the right to dispute his landlord's title.   Therefore, in most cases, the tenant is not at liberty, to refuse to redeliver the land to the landlord, at the end of the term.   But we do not know of any principle which prevents the tenant from buying up a title to the land; true, there may be a principle that forbids him to assert that title, during the term, and that commands him to deliver up the land to. his landlord at the end of the term; but we are not prepared to say that there is any principle goes further than this.

Even, however, if the counsel for the defendant are right, the answer denies the ground on which they go.   The answer says, that the land was not bought by the tenant, John

Williams et al. vs. Garrison.

B. Williams, but by his son, Henry; and the answer is just as full and positive, in this respect, as it was in the other.

In any view of the case, then, we think, that the Court erred in not dissolving the injunction.

Judgment reversed.