## VADA NAVAL STORES COMPANY *v.* SAPP.

1. The petition as amended set forth a cause of action, and there was no error in overruling the general and special demurrers.
2. The vendee of a tenant who has an apparent legal title and from whom the purchase was made, with or without notice of the tenancy, can not dispute the title of the landlord, in an action of complaint for land, until he has restored the possession to the latter.
3. Without regard to the special assignments of error upon the admissibility of testimony and upon certain instructions given by the court to the jury, the verdict for the plaintiff was demanded, and the court did not err in overruling the motion for new trial.

No. 987.   JANUARY 15, 1919.

Complaint for land.   Before Judge Worrill.   Decatur superior court.   May 4, 1918.

The following is a condensed statement of the facts necessary to an understanding of the rulings made in this case: In July, 1904, H. H. Sapp purchased from the Troxwell heirs the west half of lot of land No. 382, containing 125 acres, more or less, in the 16th district of Decatur county. The deed was not recorded. Shortly after his purchase Sapp conveyed the land, for a valuable consideration, to Mrs. H. H. Sapp, his wife. Thereafter she leased the land to him, to be used as a location, as long as needed, for the purpose of manufacturing turpentine. The lease did not specify any particular part of the land, nor restrict the lessee to the use of any particular number of acres. In November, 1904, H. H. Sapp sold a half interest in the turpentine location to J. L. Peebles, executing to him a lease which was recorded on November 9, 1904, containing the following recital: "The land on which said still is located belongs to Mrs. H. H. Sapp; the said H. H. Sapp hereby conveys to said Peebles a lease which he holds to said land to be used as a location as long as it is needed for the purpose of manufacturing turpentine." Thereafter Sapp sold his remaining half interest in the turpentine location to M. A. Bethune; and the lease from Sapp to Bethune, also recorded on November 9, 1904, contained in substance the same recital. Peebles and Bethune were, at the time, members of the copartnership of J. L. Peebles & Company, or shortly thereafter formed said copartnership, of which D. A. Autry also was a member. In 1905 Emma H. Wright and Columbia H. Lewis, two of the Troxwell heirs, conveyed said west half of lot of land to J. E. Harrell by deed recorded on August 10, 1905. Harrell conveyed the land to J. L. Peebles & Company

on September 6, 1905, by deed recorded on the following day. At or about the time of this last purchase Peebles & Company notified Mrs. Sapp, by letter, that they no longer held under her, but that they were the owners of the true title to the half lot of land upon which the still site was located. Neither Mr. nor Mrs. Sapp, according to their contentions, received this notice. Peebles & Company did not surrender or offer to surrender the possession of the still site or any part of the land to Mrs. Sapp. On October 25, 1906, Bethune conveyed to his copartners his interest in the copartnership and turpentine site; and on January 18, 1910, by deed recorded on March 12, 1910, the copartnership conveyed the property to D. A. Autry & Son.

On February 14, 1911, Mrs. Sapp filed suit against Autry & Son, alleging that she was the owner in fee simple of said west half of said lot of land and had a perfect paper title thereto; that the defendants were in possession of the timber on said land and were turpentining it under some pretended claim of right, to her injury and damage; and she prayed for injunction against the defendants, for damages in a sum stated, and for process. By amendment she alleged, in substance, that Autry & Son were her tenants; that they procured possession of the premises in the manner hereinbefore detailed, and, after the purchase from Harrell, attempted to set up an adverse claim of title, in disregard of plaintiff's title; that the turpentine site was located on said half lot of land, that the defendants had the right to use the same, so long as needed, for the purpose of manufacturing turpentine, but that the boxing of the timber on the land was a trespass; and that inasmuch as defendants occupied the relation of tenants to the plaintiff, the trespass was wilful. She therefore prayed for damages in an increased amount. The defendants filed an answer in which they denied the trespass, and set up title in themselves to the half lot of land. On May 13, 1913, the plaintiff recovered a verdict against Autry & Son in the sum of sixty-five dollars. In 1911, after the filing of the suit aforesaid and before its termination, Autry & Son sold the half lot in dispute to the Vada Naval Stores Company, a copartnership, and delivered the possession to them. The purchase was negotiated by one Ball, a member of said copartnership. Mrs. Sapp filed suit to the May term, 1914, of the superior court, against the Vada Naval Stores Company, for the recovery

of the land with mesne profits. In addition to the foregoing, she alleged that Ball had actual notice and knowledge of the suit against Autry & Son at the time of the purchase, and that whatever claim of title "defendants had to said land is void as against plaintiff." Before the trial she amended by praying that "she recover possession of the property described in the petition, and that judgment be rendered directing the defendants to restore said property to the possession of the plaintiff," and that she recover rents only from the filing of the petition. The defendants demurred generally and specially. The verdict was for the plaintiff for the premises, and one hundred dollars rents. The defendants filed a motion for new trial, which was overruled, and they excepted to that ruling, and to the overruling of the demurrer.

*M. E. O'Neal,* and *Hartsfield & Conger,* for plaintiffs in error.

*T. S. Hawes,* contra.

GEORGE, J. (After stating the foregoing facts.) The petition set forth a cause of action, and the court did not err in overruling the general demurrer. In so far as any of the grounds of special demurrer were meritorious, they were fully met by timely amendment. In our opinion the verdict in favor of the plaintiff in the court below for the premises in dispute was demanded by the evidence. The special assignments of error, complaining of rulings of the court upon the admissibility of evidence and of instructions by the court to the jury, do not relate to the question of mesne profits; or if they do relate to that issue, no reason appears from any of them why the verdict for mesne profits should be disturbed.

The relation of landlord and tenant existed between Mrs. Sapp and her husband, H. H. Sapp, as well as those holding the possession of the premises under him. In the assignment of his lease to Peebles & Company, or to Peebles and Bethune, it was recited that Mrs. Sapp was the owner of the half lot of land in controversy, but that the assignees of Sapp should have the right to use the land so long as needed for the purpose of manufacturing turpentine. The elder Autry was a member of the firm of Peebles & Company, and his possession of the premises was acquired with full knowledge of the tenancy of Sapp and of Peebles & Company. The relation of landlord and tenant, therefore, existed between Mrs. Sapp and Autry & Son. Autry & Son sold the land in controversy to

the Vada Naval Stores Company. The evidence in the record does not require a finding that the Vada Naval Stores Company knew of the tenancy of Autry & Son at the time of the purchase from the latter. In the view we take of the case, it is immaterial whether the Vada Naval Stores Company knew of the relation between Mrs. Sapp and Autry & Son before or at the time of the purchase. The tenant is estopped, as against the landlord, to deny the lessor's title. As otherwise stated, the tenant can not dispute the title of his landlord. The tenant can neither dispute the title of his landlord nor attorn to another while in possession acquired by his contract or lease; and if after the expiration of his term he desires to contest the title of his landlord, he must first. surrender. the possession acquired from him. Civil Code, § 3698; *Williams* v. *Garrison,* 29 *Ga.* 503; *Grizzard* v. *Roberts,* 110 *Ga.* 41 (2), 44 (35 S. E. 291). This rule of the common law, as well as of our code, will not be controverted. It is, however, insisted that the rule has no application here, since the Vada Naval Stores Company had no knowledge of the tenancy of Autry & Son at the time of the purchase. As a general rule, when the relation of landlord and tenant is once established, it attaches to all who may succeed to the possession through or under the tenant either immediately or remotely. Were this not so, the general principle above discussed would be of little benefit to the landlord. The fact that the assignment by the tenant is in the form of a fee-simple conveyance is immaterial. The fact that the tenant exhibited to the purchaser an independent title is, in our view of the matter, likewise immaterial. We are aware that the Supreme Court of Pennsylvania in the case of Thompson v. Clark, 7 Pa. 62, has reached a contrary conclusion, but, as we think, erroneously. In that case it was held: "The vendee of a tenant who has an apparent legal title, and from whom the purchase was made without notice of the tenancy, is not bound to deliver up possession to the landlord, but may defend in ejectment." In 2 Herman on Estoppel, § 861, it is said that the same estoppel which prevents a tenant from disputing his landlord's title likewise extends to all persons who enter upon premises under a contract of lease, and to all persons who by purchase, fraud, or otherwise, obtain possession from such tenant. It is there, however, added: "But if one, not knowing that the tenant holds a lease, purchases the estate by an absolute deed from

the tenant, who has an apparent legal title other than his lease, such purchaser may contest the title of the lessor." The text is based upon Thompson v. Clark, supra, and upon intimations contained in Cooper v. Smith, 8 Watts (Pa.) 536, and Jackson v. Davis, 5 Cow. (N. Y. 3 123 (15 Am. D. 451). In *White* v. *Barlow, 72 Ga.* 887, the second headnote is as follows: "A tenant can not dispute his landlord's title, and the title of the landlord is good against such tenant, or one holding under him with notice." In the course of the opinion by Chief Justice Jackson it was observed that the proof in that case positively showed notice in the assignee or purchaser from the tenant. The apparent intimation contained in the decision must, therefore, be taken in connection with the facts of the case.

It is, of course, true that a purchaser from such tenant, without knowledge of the tenancy, may assert his adverse possession as a basis of prescriptive title. This principle is recognized in *McDougald* v. *Reedy, 71 Ga.* 750. These two distinct principles must not, however, be confused. A clear statement of what we believe to be the sound rule upon the question presented in this case is found in Lane's Lessee v. Osment, 17 Tenn. 85: "Neither the tenant himself, nor a purchaser of the land under him, whether with or without notice of the landlord's right, can dispute the title of the landlord within the period necessary to form the bar of the statute of limitations." In Jackson v. Harsen, 7 Cow. (N. Y.) 323 (17 Am. D. 517), it was held: "A purchaser from the tenant, entering under an absolute conveyance in fee, is deemed to enter as the lessor's tenant, though he may not have known that his grantor derived possession from the lessor." So also in Reed v. Shepley, 6 Vt. 602, it was ruled: "One holding land under another cannot set up an adverse claim until he has first surrendered up the possession; and all who claim under him are tenants subject to the same rule, whether they knew of that relationship or not." See also Jackson v. Scissam, 3 Johns. (N. Y.) 498; Emerick v. Tavener, 9 Grat. 220 (58 Am. D. 217); Jackson v. Davis, supra; Phillips v. Rothwell, 7 Ky. 33. Prior to the Code of 1863 a judgment in ejectment was not conclusive as to the title between the parties thereto. *Parker* v. *Stambaugh, 71 Ga.* 735. By section 3275 of the Code of 1863 (Code of 1910, § 5583) it is declared that "A judgment in ejectment shall be conclusive as to the title

between the parties thereto, unless the jury find for the plaintiff less than the fee." The action of ejectment by the landlord against the tenant, where the landlord relies for recovery upon the privity existing between the parties, involves only the right of possession. Cases may be found to the contrary. Jochen *v.* Tibbells, 50 Mich. 33 (14 N. W. 690); Shaw *v.* Hill, 79 Mich. 86 (44 N. W. 422); McKie *v.* Anderson, 78 Tex. 207 (14 S. W. 576). But the true rule is that such a judgment in favor of the landlord is not conclusive in a subsequent action by the tenant, because the tenant can not be concluded by a judgment as to matters which he could not litigate in the action in which the judgment was rendered. If the judgment in ejectment in favor of the landlord against the tenant is conclusive as to the title, equity, under proper pleadings, would certainly enable the tenant to formally admit the possession of the landlord and to assert that his title is in fact paramount, thereby assuming the same burden that he would be required to assume and carry in a separate action. But in actions for rent and for use and occupation, the reason of the rule which estops the tenant from disputing the title of the landlord is plainly apparent. It is not apparent if the judgment in an action of ejectment by the landlord against the tenant is conclusive as to the title between the parties. Of course the tenant, in such an action, can not set up want of title in the landlord, nor can he set up paramount title in another; but if the judgment is conclusive as to the title, or the suit against the tenant is so framed in any case as to adjudicate the question of title, the English rule, which permits the tenant to set up paramount title in himself, is sound in principle. Accident Ins. Co. *v.* Mackenzie, 5 Law T. (N. S.) 20, 10 C. B. N. S., Am. Reprint, 870. We are bound, under our decisions, to apply the estoppel in actions of ejectment, or of complaint for land, by the landlord against the tenant; but our conclusion is that the effect of the judgment against the tenant, unless the suit be so framed as to adjudicate the title, is to force the tenant to a separate action for the purpose of asserting his title. In the case at bar we are not embarrassed in applying the estoppel for any of the reasons suggested above, because the petition, as finally amended, prayed only for the recovery of the possession of the land, together with the rents from the time of the filing of the petition. While some of the allegations in the petition may have been broad enough to call

for an adjudication of the title, the landlord expressly alleged that the tenant's claim of title was "void as against plaintiff," and upon the trial she relied only upon the privity existing between the parties. The evidence, without dispute, shows that Sapp had acquired the possession of the premises from the plaintiff under and by virtue of the lease. Sapp's possession thus acquired passed by successive assignments into the Vada Naval Stores Company. The possession of Sapp and of those who held under him, including the possession of that company, was therefore the possession of the original lessor. Her possession was notice, under our code, of whatever rights she had in the premises. It is this possession that must be restored before the tenant can assert title adverse to the landlord.

In our opinion the most that can be said in favor of a vendee of a tenant who has an apparent legal title, and from whom the purchase was made without notice of the tenancy, is that as between such vendee and the lessor the equities are equal. In such case the landlord, having the prior equity, should prevail. We deem it unnecessary to say that the letter from Peebles & Company to Mrs. Sapp, conceding that it was received by Mrs. Sapp, did not amount to a surrender of the premises to Mrs. Sapp. We also think it unimportant that only a small part of the half lot of land involved was actually used by Sapp and those holding under him as a site for the manufacture of turpentine. The whole tract was leased for that purpose, and, so far as the record discloses, there was no restriction, express or implied, in the lease as to the quantity of land that might be so used. The possession of the whole tract was therefore acquired under and by virtue of the lease, and the possession thereof must be restored to the lessor.

In view of the ruling made upon the controlling question in this case, it is unnecessary to decide whether the suit for trespass brought by Mrs. Sapp against Autry & Son, which was pending at the time of the sale by Autry & Son to the Vada Naval Stores Company, was lis pendens, and whether this doctrine is to be applied in this case. We call attention, in passing, to the New York case of Hailey v. Ano, 136 N. Y. 569 (32 N. E. 1068, 32 Am. St. R. 764), where it was ruled that in such an action, the land itself not being the subject-matter of the suit, and there being nothing in the pleadings to show that title thereto is involved, the purchaser

of the land pendente lite is not bound by the judgment in a subsequent action involving title to the same land.

*Judgment affirmed. All the Justices concur.*