## WESTERN & ATLANTIC RAILROAD CO. *v.* HERNDON.

In order for the widow of a deceased employee of a railroad company to recover from the company for the homicide of her husband in a railroad collision, it must appear that the deceased was free from any fault contributing to the accident. The evidence for both the plaintiff and the defendant in the present case showing that the plaintiff's decedent was guilty of negligence, and that this negligence contributed to the homicide, a verdict for the plaintiff was unwarranted and should have been set aside as contrary to the evidence.

Argued October 14, — Decided November 8, 1901.

Action for damages. Before Judge Fite. Whitfield superior court. April term, 1901.

*Payne & Tye* and *R. J. & J. McCamy*, for plaintiff in error.
*C. T. Ladson* and *Jones & Martin*, contra.

LEWIS, J. The plaintiff below brought suit to recover for the homicide of her husband, who was in the employment of the defendant company as brakeman. It appears that on the night of the accident a freight-train of the defendant, made up partly of cars equipped with air-brakes and partly of cars not so equipped, left Chattanooga for Atlanta, with Herndon, the plaintiff's decedent, as middle brakeman, stationed on the first of the non-air cars. When in the vicinity of Tunnel Hill, a station on the defendant's line of railroad, the train, on account of alleged defects in the coupling apparatus, became separated, or "broke loose," between the last of the air cars and the first of the non-air cars. The rules of the company required that if a train should become parted while in motion all trainmen must use great care to prevent the detached parts from coming in collision; provided that the engineer and the brakeman of the detached portion should each give "broke-loose" signals, and that the engineer should keep the front part of the train in motion until the detached portion was stopped. It appears that the engineer did give the "broke-loose" signal as soon as he discovered that the cars had become separated, but received no signal from Herndon, whose duty it was to give such signal. Failing

to see any sign of the rear, or detached, portion of the train, and believing that it had been stopped, the engineer slackened his speed and sent the front brakeman back to ascertain if any fragments of the broken coupling apparatus were dragging on the ground, directing him to give a " go-ahead " signal in the event that he should discover that the detached portion of the train had not been stopped, and if he should find that it had been stopped and that the danger of a collision was over, to give a "stop" signal. The brakeman found that the rear portion of the train had not been stopped, but was approaching at a high rate of speed. He swears that he gave a " go-ahead " signal; the engineer swears that he gave a "stop" signal. The front portion of the train was brought to a standstill, the rear portion came into collision with it, and Herndon was thrown to the ground, receiving injuries from which he subsequently died. Eidson, the front brakeman, who was sent back by the engineer to see if anything was dragging, testified that when the rear portion of the train passed him, just before coming into collision with the front portion, Herndon was standing on the end of a box-car with his hand on the brake, apparently in the act of getting off of the box-car into a coal-car. The evidence indicates that if Herndon had been alert he could have put on a sufficient number of brakes to have stopped the detached portion of the train, thus preventing the collision. On the trial of the case the jury returned a verdict for the plaintiff for $5,921 damages; the defendant made a motion for a new trial, which was denied, and it excepted.

It is a well-established principle of our law that in order for the widow of a deceased employee of a railroad company to recover for the homicide of her husband, it must affirmatively appear that the deceased was guilty of no negligence contributing to his death. The very section of the code which gives the right of recovery for injuries to railroad employees expressly provides that the injury must be "without fault or negligence on the part of the person injured." Civil Code, § 2323. The rule laid down in *Prather* v. *Railroad Co.*, 80 *Ga.* 427 (2), is as follows: " If the deceased immediately or remotely, directly or indirectly, caused the injury or any part of it or contributed to it at all, his wife could not recover." This doctrine is so well settled that only passing reference need be made to a few of the cases in which that question has been decided. See *Central R. Co.* v. *Mitchell*, 63 *Ga.* 174 (8);

*Prather* v. *R. Co.*, supra; *Georgia R. Co.* v. *Hicks*, 95 *Ga.* 302 (2); *Georgia, C. & N. R. Co.* v. *Hallman*, 97 *Ga.* 317; *Walker* v. *Railroad Co.*, 103 *Ga.* 826; *Chattanooga R. Co.* v.*Myers*, 112 *Ga.* 237; *Blackstone* v. *Railway Co.*, 112 *Ga.* 762.  Applying this principle to the case now under consideration, we are constrained to hold that the recovery against the railroad company was unwarranted by the evidence in the record before us.  It is true that the engineer was probably guilty of a violation of the rules of the company in failing to keep the front portion of the train in motion until he was certain that the rear portion was stopped and the danger of a collision over; and the conflicting evidence as to whether the front brakeman, Eidson, gave a "stop" signal or a "go-ahead" signal, upon ascertaining that the detached portion of the train was approaching, would also indicate either that the brakeman was negligent in giving the signal or that the engineer was negligent in interpreting it; but it is also undeniably true that Herndon was himself at fault in failing to promptly give the required "broke-loose" signal upon hearing the corresponding signal blown by the engineer, for the giving of this signal would have notified the engineer of the whereabouts of the detached portion of the train and that it was still in motion, and would have prevented the mistake of the engineer which led to the collision between the two portions of the train.  The further fact stands forth that Herndon made no appreciable effort to stop the detached portion of the train by applying brakes as required by the rules of the company.  It appears from the evidence that at the time of the collision he had put on only one brake, while it is clearly shown that he had time to put on several, and that if he had been thus diligent in the discharge of his duty he could have materially checked the speed of the cars, if not entirely stopped them.  It is therefore clear that by his own negligence the plaintiff's decedent substantially contributed to the accident which resulted in his death; and applying the rule of law announced in the outset of this opinion, it follows that there can not, under the evidence in the record before us, be a lawful recovery against the defendant company.

*Judgment reversed.   All the Justices concurring.*