## GLORE *v.* SCROGGINS.

1. A testator devised his property as follows: "I will and bequeath to my wife, Rhoda E. Glore, all the property, real and personal, during her lifetime or widowhood, for her to give to our children as they arrive of age as she may be able, keeping a memorandum so as each child shall be equal, that I may die seized and possessed. I will and do appoint and constitute Rhoda E. Glore, my wife, my executrix to this my last will and testament." There were several children. *Held,* that the will created an estate for life or during widowhood in the wife, with remainder to the children.

2. The will conferred no power of sale upon the executrix, and a deed made by her without proper order of the court, under a sale made at a place not authorized by law, though purporting to be made by her as executrix, did not convey a fee-simple title, but only her life-estate.

3. The remaindermen, not being entitled to possession until after the death of the life-tenant, could not bring suit to recover the land until that time, and prescription did not commence to run against them until then.

4. Where a joint action at law, not involving any equitable proceeding, is brought by several plaintiffs to recover land, and there is no prayer for a several recovery, under former rulings of this court it can not be sustained, except by proof showing a joint right of recovery in all of the plaintiffs.

5. Where in such a case it appeared from the evidence introduced by the plaintiffs that one or more of them was not entitled to recover, there was no error in awarding a nonsuit.

Argued January 18,—Decided February 19, 1906.

Complaint for land. Before Judge Gober. Cobb superior court. March 14, 1905.

Glore and others brought their action against Mrs. Scroggins, to recover certain land. They alleged, that George W. Glore was the owner of the land, and died in 1863 (?), testate; that they were remaindermen under the will and also were his heirs, and represented and owned the interests of all the heirs; that the life-tenant under the will had sought to convey the land; that the purchaser under her had taken possession, and that she died in 1903. The plaintiff prayed to recover the land and mesne profits. The defendant denied that she obtained only a life-estate by the conveyance under which she claimed, and asserted that a fee-simple interest was conveyed to her. She also pleaded that she had a prescriptive title. On the trial, at the close of the evidence on behalf of the plaintiffs, the court granted a nonsuit, and they excepted.

*Green & Green* and *N. A. Morris,* for plaintiffs.
*Speairs & Harris* and *J. Z. Foster,* for defendant.

LUMPKIN, J. (After stating the foregoing facts.) 1. Between two things so widely different as a tub and a will a certain analogy is disclosed in the trite and homely saying that "every tub must stand upon its own bottom." This idea was expressed by Jackson, Chief Justice, when he said: "Every will is a thing to itself. It is emphatically not only *sui juris* but *sui generis*. Its terms are its own law, and the application of that law by construction of itself—of the statute which the testator himself enacted, to the contestants for its bounty, is the plain duty of the court." *Olmstead* v. *Dunn,* 72 *Ga.* 855, 856. The learned jurist, of course, meant where the provision of the will was not contrary to law or

public policy. In *McGinnis* v. *Foster, 4 Ga.* 378, Lumpkin, J., delivering the opinion, said : "It has been said that no case upon a will has a brother, such is the endless diversity of language employed by persons in the final disposition made of their effects." Certain general rules or principles for the guidance of the courts in construing wills may be laid down. But in the application of those rules the particular language of the will itself, and sometimes the circumstances, must play an important part. Among the rules which may aid us in the present investigation we mention a few. "In the construction of all legacies, the court will seek diligently for the intention of the testator, and give effect to the same, as far as it may be consistent with the rules of law." Civil Code, § 3324, and cases cited in notes ; 30 Am. & Eng. Enc. Law (2d ed.), 661 ; *Cook* v. *Weaver,* 12 *Ga.* 41. "The natural and reasonable presumption is that when so solemn and important an instrument as a will is executed, the testator intends to dispose of his whole estate, and does not intend to die intestate as to any part of his property, which presumption is overcome only where the intention of the testator to do otherwise is plain and unambiguous, or is necessarily implied." 30 Am. & Eng. Enc. Law (2d ed.), 668. If the will creates a life-estate but clearly does not dispose of the reversionary interest, it will pass by inheritance to the heirs of the testator. *Haralson* v. *Redd,* 15 *Ga.* 148 ; *Oliver* v. *Powell,* 114 *Ga.* 598, 599. "The law favours vested remainders ; and it is an established rule, that the court never construes a limitation into an executory devise, when it can take effect as a remainder ; nor a remainder to be contingent, when it can be taken to be vested." *Vickers* v. *Stone, 4 Ga.* 461, 463 ; *McGinnis* v. *Foster, 4 Ga.* 382, supra ; *Fields* v. *Lewis,* 118 *Ga.* 573, 575 ; Civil Code, § 3104 ; *Jossey* v. *Brown,* 119 *Ga.* 765 ; *Hudgens* v. *Wilkins,* 77 *Ga.* 556. Where there are divesting clauses, especially of a remainder, they are to operate so as to vest the estate indefeasibly at the earliest possible period. *Sumpter* v. *Carter,* 115 *Ga.* 893, 896. "An estate may be created during widowhood, and such estates shall be subject to the same rules as life-estates." Civil Code, §§ 3108, 3089. For a will which was held to create an estate for life only on much less clear language than that under consideration, see *Crowley* v. *Crouch,* 114 *Ga.* 135. "Devises for the life, or during the natural life, or during or for the lifetime of the devisee, and other expressions of similar import

are effective limitations of a life-estate, notwithstanding other provisions of the will, which, if standing alone, might show a purpose to pass a greater estate." 30 Am. & Eng. Enc. Law (2d ed.), 747. On this subject see also, 1 Jarman on Wills (5th Am. ed.), 686; Brant v. Virginia Coal Co., 93 U. S. 326; Mansfield v. Shelton, 67 Conn. 390; Chase v. Ladd, 153 Mass. 126; Schouler on Wills (3d ed.), § 560; Mart. Conv. (2d ed.), § 585.

The item of the will of George W. Glore which we are called upon to consider reads as follows: "I will and bequeath to my wife, Rhoda E. Glore, all the property, real and personal, during her lifetime or widowhood, for her to give to our children as they arrive of age as she may be able, keeping a memorandum so as each child shall be equal, that I may die seized and possessed. I will and do appoint and constitute Rhoda E. Glore, my wife, my executrix to this my last will and testament." The testator and his wife had children. The entire will is not sent up in the record, and the presiding judge certifies that this item is the only material portion of it. That it is inartificially drawn is apparent. Three possible constructions have been suggested: first, that the wife was made a trustee for the children, and that by the expression, "for her to give to our children as they arrive of age as she may be able, keeping a memorandum so as each child shall be equal," a trust was created in favor of the children; second, that a life-estate or estate during widowhood was created in favor of the wife of the testator, but no disposition was made of the reversionary interest; and third, that a life-estate was created for her with a remainder to the children. The first construction above suggested would not be in harmony, we think, with the evident purpose of the testator. It seems clear that he desired to make provision for his wife. If the clause quoted transformed her into a mere trustee, the purpose indicated would not be effectuated. Moreover, if it were intended that she should be simply a trustee, the words, "during her lifetime or widowhood," would have no effect, and would be mere surplusage. A trustee can, of course, be such only during her lifetime. Civil Code, § 3162, reads as follows: "Precatory or recommendatory words will create a trust if they are sufficiently imperative to show that it is not left discretionary with the party to act or not, and if the subject-matter of the trust is defined with sufficient certainty, and if the object is also certainly defined, and

the mode in which the trust is to be executed." The words "for her to give," etc., in the will, construed in connection with the rest of the item, are not such precatory or recommendatory words as will create a trust under this section. It is left discretionary with her to give off to the children as she is able, and it is not declared what she shall give off, whether the entire share of each child or only a part. Had the intention been apparent that the wife should hold or use the property for the benefit of the children during minority, a trust would have been created, although the words were not mandatory in form. Thus in *Hunter* v. *Stembridge,* 12 *Ga.* 192, the following words, used by the testator in relation to his wife, were held to create a charge which equity would enforce: "And I also allow my son Henry to give her a support off my plantation during her lifetime." See also *Maxwell* v. *Hoppie,* 70 *Ga.* 152. We do not think that this item created a trust in favor of the children of the testator. Nor did it confer on them an absolute right to demand the delivery to them of a share upon arriving at twenty-one years of age. The widow was to have an estate for life or during widowhood, and could not be compelled to divide up the property among the children to the destruction of that estate, though she had power to give off or advance to the children arriving at age, as she was able.

The second possible construction, namely, that the will conveyed a life-estate to the wife, but made no disposition as to the reversionary interest, is also objectionable. The general presumption against partial intestacy is strengthened here by the fact that the testator declared that he willed and bequeathed all of the property, real and personal, of which he might die seized and possessed. As already noted, he also authorized the widow to give property to their children as they should become of age, as she might be able. Clearly he did not intend that the widow might give property to the children to be held by them merely during her life or widowhood. Further, he directed that if she should give property to the children, she should keep a memorandum so that each child should be made equal. This idea of giving to the children and equalizing them is inconsistent with the view that no other estate was created beyond an estate in the testator's wife during life or widowhood. It is certain that the testator intended to create a life-estate, or an estate during widowhood, in the wife. It is equally certain that

he contemplated that the property should ultimately go to their children, share and share alike, and that the estate created for the children was not a mere life-estate. This leads inevitably to the acceptance of the third construction, that the intention of the testator was to create an estate for life or during widowhood for his wife, with remainder to their children. The expression, "for her to give to each child," etc., was intended to confer upon her the power to give property to the children as they should arrive at age, as she might be able to do so, keeping an account so that in the final division the children should be made equal.

2. Under the foregoing construction of the will of George W. Glore, his wife took only an estate during life or widowhood in the land now involved in controversy, and had no power to convey a fee-simple estate. The will conferred no power of sale on her as executrix. A mere provision for dividing an estate does not include a power to sell it. It appears that she made a deed reciting that an order had been granted by the court of ordinary authorizing her as executrix to make the sale, and that it was made after due advertisement, before the court-house door. The deed purported to be made by her as executrix. It recited, however, that the order was granted at the August term, 1864, of the court of ordinary of Cobb county; while it appears from the family record of births and deaths that the testator did not die until August 30. No record of any order could be found in the ordinary's office, and the uncontradicted evidence showed that the sale did not take place before the court-house door, but on the premises some miles distant in the country. Under this state of facts, the deed did not convey title as an executor's deed, but, being signed by Rhoda E. Glore, it conveyed whatever interest she had in the property, which, as we have seen, was a life-estate.

3. The remaindermen, not being entitled to demand possession until after the death of the life-tenant, could not bring suit until then (except for such property as she may have given off to them), and no prescription commenced to run against them until that time. She died in November, 1903, and the suit was filed in 1905. So that no prescriptive title had ripened.

4, 5. The suit was a joint one at law, and there was no prayer for a several recovery. This being so, the action could not be sustained

except by proof showing a joint right of recovery in all the plaintiffs. One of them gave a receipt dated very soon after the sale, stating that he had "received from the executrix the sum of $100 in full payment of specific legacy bequeathed to John A. Glore, son of said deceased." As no other legacy to him appears in this record, the receipt apparently had reference to his share as a re-mainderman. True, he testified that he received no money but did receive a horse some time before he gave the receipt; but he nowhere negatived the fact that the receipt spoke the truth, and that he had received full payment of his legacy. In addition to this, he was asked, "Don't you know that your sister and Hiram [another legatee] got their part out of that money paid for the land?" To which he answered: "They got it in something; they didn't get it in money. Hiram got something, and sister got some things in the house." It appears that the witness and another legatee were present when the sale was made. If they were so and received some of the proceeds, they could not repudiate it because of irregularity, and recover the land from the purchaser. Further than this the purchaser does not seem to be in a position to set up an estoppel. At least, there was evidence from which a jury might have found that he was not a bona fide purchaser without notice of the defect in the title, and that he was not misled into making the purchase in reliance on the conduct of the plaintiffs.

The suit being joint, and the evidence as contained in the record before us indicating that some of the plaintiffs were not entitled to recover, a nonsuit was properly awarded. *Medlock* v. *Merritt*, 102 *Ga.* 212.     *Judgment affirmed. All the Justices concur.*