HAPPY VALLEY FARMS INC. *et al. v.* WILSON *et al.*

No. 13815.   SEPTEMEBR 26, 1941.

*Wright & Willingham* and *Sizer, Chambliss & Kefauver,* for plaintiffs in error.

*Rosser & Rosser* and *Shaw & Shaw,* contra.

GRICE, Justice. The right of the husband and children to bring a suit for the homicide of the wife and mother is based on the provisions of the Code, § 105-1306, as follows: "The husband may recover for the homicide of his wife; and if she leaves child or children surviving, the husband and children shall sue jointly and not separately, with the right to recover the full value of the life of the decedent, as shown by the evidence, and with the right of survivorship as to said suit, if either shall die pending the action." The right to recover, however, must be determined in part by the rule which in effect declares that no plaintiff can recover when his own negligence contributing to the injury or death equals or exceeds that of the defendant. *Central Railroad & Banking Co.* v. *Newman,* 94 *Ga.* 560 (21 S. E. 219); *Southern Railway Co.* v. *Watson,* 104 *Ga.* 243 (30 S. E. 818); *Willingham* v. *Macon & Birmingham Railway Co.,* 113 *Ga.* 374 (38 S. E. 843); *Georgia & Florida Railway* v. *Newton,* 140 *Ga.* 463 (79 S. E. 142). Also there should be borne in mind the principle that joint tort-feasors may be sued separately, each being severally liable. Code, § 105-1207; *Mashburn* v. *Dannenberg Co.,* 117 *Ga.* 567 (13), 582 (44 S. E. 97). Compare *Wometco Theatres Inc.* v. *United Artists Corporation,* 53 *Ga. App.* 509, 513 (186 S. E. 572), and cit. Giving effect to the foregoing, it seems fairly plain that in the situation outlined in the first question submitted it was correctly assumed by the Court of Appeals that there can be no recovery by the husband. Counsel for defendants in error insist that we should rule that although the negligence of the husband may have been equal to or greater than the negligence of the defendant, a recovery should be had for the full value of the life of the wife, unless the defendant on the trial of the case pleads the negligence of the husband in diminution of the amount of damages. However, we must decline to enter into that field of inquiry, since the question propounded does not bring it within its purview, our opinion being sought only as to the substantive law as to the effect of the husband's contributory negligence on the right of a recovery, and not as to the pleading necessary to avail the defendant of its rights in the premises.

We are not here dealing with the contributory negligence of a custodian of a child as affecting the right of the parent to recover. for its death or injury, as was the case of *Atlanta & Charlolte Air-Line Ry. Co.* v. *Gravitt,* 93 *Ga.* 369 (20 S. E. 550, 26 L. R. A. 553, 44 Am. St. R. 145), on which subject an annotation may be found in 23 A. L. R. 649, 655, in connection with the report of the case of Union Traction Co. *v.* Gaunt, 193 Ind. 109, 135 N. E. 486, or with the related question as to the effect of contributory negligence of the parent as a bar to an action by the parent or administrator for death of the child. As to this, see *Stamps* v. *Newton County,* 8 *Ga. App.* 229 (68 S. E. 947), and the note in 23 A. L. R. 661, 670, to Town of Flagstaff *v.* Gomez, 23 Ariz. 184 (202 Pac. 401). In the *Stamps* case, supra, the suit was not by an administrator, but by the mother who sued both for the value of the child's life and the value of its services. In that case the Court of Appeals held: "In refusing to strike that portion of the defendant's plea which set up that the death of the plaintiff's child was the fault of the plaintiff herself in negligently and carelessly permitting the child to pass over the foot-bridge without the guidance of some other person, well knowing that the stream at that time was very much swollen and in a dangerous condition, and that the plaintiff aided and contributed to her own injury by allowing the child to enter upon said foot-bridge without some other person to guide the child and prevent her from falling, the court did not err, inasmuch as the defendant had the right to introduce evidence to show, if it could, that the mother was present, or at least in sight, at the time the child was drowned." In Kokesh *v.* Price, 136 Minn. 304 (161 N. W. 715), it was said: "The serious question in the case is whether, in view of the negligence of Kokesh, he as administrator can be permitted to recover a verdict for the benefit of himself and children." The Minnesota court ruled as follows: "In this case there were three beneficiaries, the husband and two children. The husband alone was negligent. The question presented by this record is whether the contributory negligence of the husband barred all recovery by himself as administrator. Partial reduction, to the extent of the share he may receive as beneficiary, was not asked for in the trial court, or in this court. Defendant has seen fit to stand or fall on the contention that his negligence is a complete bar. We do not sustain this contention. We see no principle of law on which

it can be said that the negligence of one beneficiary can prejudice other beneficiaries. There is no partnership or community of interest between them; one is in no sense the agent or representative of the others. His negligence should not be imputed to them, and it should detract nothing from them. If the children were small, and the deceased the breadwinner of the family, the objectionable result of such a rule would be more pronounced, but the principle is just the same." In the annotation to this case in 23 A. L. R. 643, the editors begin with this comment: "There is a considerable number of cases supporting the general proposition that the contributory negligence of one beneficiary in an action for death will not bar recovery for the benefit of other beneficiaries, who were not negligent. Recovery will be defeated, at most, only to the extent of the negligent beneficiary's interest. The reported case (Kokesh v. Price, ante, 643) is in accord with this general rule." But the editors add that "There is some conflict, however, on the question." Among the decisions taking the contrary view is that of Hazel v. Hoopeston-Danville Motor Bus Co., 310 Ill. 38 (141 N. E. 392, 30 A. L. R. 491), but to the report of the case in the last-named volume there is an annotation wherein the editors say, that, "As stated in the earlier annotation on the present question, the weight of authority supports the doctrine that the contributory negligence of one beneficiary in an action for death will not bar recovery for the benefit of the other beneficiaries who were not negligent." A further annotation may be found in 69 A. L. R. 470, to the report of the case of Herrell v. St. Louis-San Francisco Railway Co., 324 Mo. 38 (23 S. W. 2d, 102), where many additional authorities are cited. While as on many other questions there is a minority ruling, the great majority of the decisions hold that the negligence of one beneficiary can not be charged against another.

While counsel for plaintiff in error in their brief do not so state it, their position seems to be that we should apply to this character of suits the prevailing rule that when plaintiffs sue jointly in ejectment for the recovery of realty, and the proof shows that one of them is not entitled to recover, there can be no recovery for any of them. See *Bohanan* v. *Bonn*, 32 *Ga.* 390; *Walker* v. *Pope*, 101 *Ga.* 665 (29 S. E. 8) ; *Glore* v. *Scroggins*, 124 *Ga.* 922 (53 S. E. 690). This rule is far from being universal in its application. It is not applicable even in ejectment where an equitable plea is filed which

affects the plaintiffs differently. *Rumph* v. *Truelove,* 66 *Ga.* 480. The rule does not prevail at all in equity. *Bigham* v. *Kistler,* 114 *Ga.* 453 (40 S. E. 303). The foundation of this rule as applied in ejectment cases rests, we apprehend, on the fact that originally ejectment was employed only to determine the right of possession, and not until the adoption of our first Code, containing what is section 33-119 of the Code of 1933, did a judgment therein determine title also. *Parker* v. *Stambaugh,* 71 *Ga.* 735, 736; *Vada Naval Stores Co.* v. *Sapp,* 148 *Ga.* 677, 681-682 (98 S. E. 79). But the right of the coplaintiff in the case before us depends on neither the right of possession nor title, but it is one that did not exist at common law, being given by legislative enactment.

It is true that this court has more than once said that where the homicide is that of a mother who leaves a husband and child or children, the right of action given to the husband and children is joint. *Thompson* v. *Georgia Railway & Power Co.,* 163 *Ga.* 598, 602 (136 S. E. 895); *Hood* v. *Southern Railway Co.,* 169 *Ga.* 158, 164-165 (149 S. E. 898); *Watson* v. *Thompson,* 185 *Ga.* 402, 405 (195 S. E. 190); *Thompson* v. *Watson,* 186 *Ga.* 396 (197 S. E. 774). The statute itself does not describe it as a joint cause of action. It merely declares that the plaintiffs shall sue jointly and not separately. What was ruled in these cases was that if the deceased left a husband and children, or a husband and child, or children and no husband, an action for her death under this statute could not be maintained unless the husband, in the event she left a husband, and all the children surviving her, were named as plaintiffs in the action. For the death of the mother the children had no right to sue, nor had the husband, until the passage of this statute. It did create the cause of action. And since the statute declared that they should sue jointly and not separately, it was in that sense that it was spoken of as a joint cause of action, or a joint right of action. It was a joint right to bring the suit; that right, if it be exercised at all, to be by all of them who survived her. All of the decisions next above referred to were dealing with the necessity of all joining as plaintiffs. While some of the reasoning employed in some of these cases may seem to point the other way, even strongly so under the language used, the decisions must be considered in the light of their facts; and when so considered, they hold nothing contrary to the view now being expressed.

An examination of the history of that provision of our law in the Code, § 105-1306, as was done by Mr. Justice Hines in *Thompson* v. *Georgia Railway & Power Co.*, supra, adds strength to the argument that the inability of the husband to prevail will not work a denial of the children's right. Before the act of October 27, 1887 (Ga. L. 1887, p. 43), section 2971 of the Code of 1882 declared that a widow, or, if no widow, a child or children, might recover for the homicide of the husband or parent. By that act the Code section was amended by inserting after the words "surviving child or children" the following: "The husband may recover for the homicide of his wife; and if she leave child or children surviving, said husband and children shall sue jointly and not separately, with the right to recover the full value of the life of the deceased, as shown by the evidence, and with the right of survivorship as to said suit if either die pending the action." As pointed out in *Thompson* v. *Ga. Ry. & Power Co.*, supra, this act was not necessary in order to enable minor children to recover for the homicide of their mother under said section of the Code, because this court had held, in *Atlanta & West Point Railroad Co.* v. *Venable, 65 Ga.* 55, that this section gave a right of action to minor children for the homicide of their mother, and that "The only effect of this act, so far as children are concerned, is to lessen the amount which they could recover for the homicide of their mother, as under this act the full value of the life of the wife was to be shared by the husband and children jointly." To answer in the affirmative the first question propounded by the Court of Appeals would be tantamount to holding that the amendatory act of October 27, 1887, giving the husband the right of sharing with the children in the recovery for the death of the wife and mother, had the effect of limiting the rights of the children which had previously been given them. We are of the opinion that such was not the legislative intent. The child's right to recover is not derived from the father, and the negligence of the father does not deprive the child of its right to recover. The suit was correctly brought, the husband and child suing jointly, as required by the statute. Unless our interpretation of the statute in this respect be correct, then it would not be true, as stated in *Thompson* v. *Ga. Ry. & Power Co.*, supra, that the only effect of giving the husband also the right to sue jointly with the children "is to lessen the amount which they could recover," but on the con-

trary the effect of the amendatory act hereinbefore referred to would be to entirely defeat a recovery by the children.

A consideration of the fourth and fifth questions requires a reference to another section of the Code. The language of section 105-603 is as follows: "If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover. In other cases the defendant is not relieved, although the plaintiff may in some way have contributed to the injury sustained." It has been held that "other cases" are manifestly those in which the plaintiff could not by the exercise of ordinary care have avoided the consequences of the defendant's negligence; in cases of that kind, both parties being at fault, the damages are apportioned. See *Americus, Preston & Lumpkin Railroad Co.* v. *Luckie,* 87 *Ga.* 6, 7 (13 S. E. 105). In a comparatively early case it was ruled: "In an action by the wife against a railroad company for the homicide of her husband, all the facts and circumstances connected with the killing, or any relation existing by contract or by law between the person killed and the company, which would bar a recovery by him for damages, in case he had not died, apply to and govern the right of the wife." See *Hendricks* v. *Western & Atlantic Railroad Co.,* 52 *Ga.* 467. And in many later cases it has been held that if the deceased was guilty of such negligence as, had he survived, would have prevented him from recovering, it would likewise bar a recovery by one to whom the law gives a right of action for his wrongful death. *Georgia, Carolina & Northern Ry. Co.* v. *Hallman,* 97 *Ga.* 317 (23 S. E. 73); *Western & Atlantic R. Co.* v. *Herndon,* 114 *Ga.* 168 (39 S. E. 911). Of course this is the converse of the proposition. A case in point, however, is *Atlanta & Charlotte Ry. Co.* v. *Gravitt,* 93 *Ga.* 369 (20 S. E. 550, 26 L. R. A. 553, 44 Am. St. R. 145), where it was ruled that "one whose negligence has brought about a calamity to a little one whom he is legally bound to watch over and protect from injury can not be allowed to profit by the result of his own inexcusable, if not criminal, neglect and misconduct. . . The object of the rule is not to shield a negligent defendant from the penalty of his wrongdoing, but merely to deny aid to a plaintiff who, though equally guilty, nevertheless comes into a court of justice and demands the fruits of his own unpardonable neglect of both a moral and a legal duty." Compare *Savannah Electric*

*Co.* v. *Thomas,* 30 *Ga. App.* 405, 414 (118 S. E. 481), and cit. It is true that in the *Gravitt* case the court was dealing with such conduct on the part of the parent plaintiff as completely destroyed the right of recovery, and not merely such contributory negligence as would lessen the amount; but we think the controlling principle is the same, and that the greater includes the less. We are borne out in this view by the decision in *Stamps* v. *Newton County,* 8 *Ga. App.,* supra. Whether or not the husband's right to recover, if his negligence be less than the defendant's, should be denied him altogether if by the exercise of ordinary care he could have prevented the death of his wife, and thus have avoided the consequences to himself, that is, the deprivation of the life of his wife, caused by the defendant's negligence, is a question of some difficulty. However, upon due reflection we can see no reason for reading an exception of this character into the all-embracing mandate of our law, to wit, "If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover." It is probably not often that such a situation will arise in suits brought under the Code section on which the present suit is founded; but when it does, in our opinion the further provision of our law next above quoted applies. The language of the Code, § 105-603, is not "could have avoided the injuries to himself," but "the consequences to himself." The consequence to himself was the loss of the life of his wife. In one of the earliest and most famous cases where this rule was applied the suit was for the killing of the plaintiff's donkey. Davies *v.* Mann, 10 Meeson & Welsby, 546, referred to in a paper delivered before the Georgia Bar Association by Judge L. P. Goodrich, dealing with the origin of this rule. Ga. Bar Asso. Report for 1940, pp. 174 et seq.

The first question propounded by the· Court of Appeals is answered in the negative; the second in the affirmative; the third in the negative. The fourth question does not admit of a yea or nay response. Our answer to the fourth question is this: If the husband be negligent, but his negligence less than that of the defendant, he should be permitted a recovery, but, there being but one child, his part thereof should be less than one half the value of the wife's life, reduced by a sum proportioned to the amount of fault attributable to him, with the further proviso that if by the exer-

cise of ordinary care he could have avoided the consequences caused by the defendant, he is not entitled to recover at all. Nor can the fifth question be answered except in this way: There can be no apportionment of the amount of the recovery, unless the husband as well as the child is entitled to recover. If there is to be an apportionment, the child's part would be one half of the value of the life of the wife and mother, and the husband's one half of such value diminished in proportion to his negligence. The answer to the fifth question, in so far as it affects the husband's right to a portion of the recovery, is given subject to the provisos, first, that his contributory negligence is less than that of the defendant; and second, that he could not by the exercise of ordinary care have prevented the homicide of his wife. *All the Justices concur, except*

REID, Chief Justice, dissenting. The judgment in this case is based upon the proposition that the cause of action given by the lawmaking body to the husband and surviving children is joint. This right of action can not be both joint and several. It can not be made, as it is by the statute, expressly joint, and then as to recovery permissively several, as made by the decision of the majority. The fundamental error in the majority view is that it is made both joint and several. It is conceded, as has several times been held, that all must sue; but the reasoning of the majority is that, despite this requirement, some may recover when others holding the right or cause of action jointly with them may be barred. It seems clear that the whole theory behind this reasoning was rejected by this court in *Watson v. Thompson, 185 Ga. 402* (supra). In that case the Court of Appeals sought instruction on the question whether the surviving children could maintain a suit "to recover for the alleged wrongful death of the mother," where the father had survived the mother for one day and during all this period was unconscious. The court in answer to the question held: "Where a mother and father are injured at the same time, and the mother dies first, and the father is rendered unconscious at the time of the injury and lives for one day without regaining consciousness, a suit can not be maintained after the death of the father by the children of the deceased father and mother against a tort-feasor to recover for the alleged wrongful death of the mother." The court further said: "It is the contention of counsel for the plaintiffs that the word 'and not separately' should be construed to limit

and further define the words 'shall sue jointly;' and that the effect of adding the words 'and not separately' was by the legislature merely intended to prevent a multiplicity of suits by requiring all the beneficiaries under this section who were living, and had a right of action, to join in one suit. Their argument in part is that the construction contended for is strengthened by the fact that the requirement of joinder goes only to the suit, there being no statement in the section, or in the corollary sections, which says that the right of action is joint or the beneficiaries are joint beneficiaries. This view was clearly presented in the brief and strongly argued at the bar." This argument was rejected by the court, and *Thompson* v. *Ga. Ry. & Power Co.,* 163 *Ga.* 598 (supra), was pointed to for authority. *Hood* v. *Southern Ry. Co.,* 169 *Ga.* 158 (supra), was also pointed out as authority for the answer given to Court of Appeals. In 185 *Ga.* 403 (supra), it was said: "In [the *Hood*] case this court, after ruling that under § 4424 (§ 105-1306), upon the death of the mother leaving a husband and children, the husband and children have a joint action for the tortious homicide of the mother, and that the statute restricts the right to sue for such homicide to the husband and children jointly, and forbids separate actions, further held that if the husband lives after the tortious homicide of the mother, and dies before a joint action has been commenced, the children alone can not maintain an action instituted by the children, after the death of the husband, for the homicide of their mother. In that case two Justices dissented, but a re-examination of the issue there involved convinces us that the case was correctly decided." Then speaking of the fact that the husband remained unconscious during the brief interval he survived, the court stated: "It is the fact that he survived his wife that makes fatal the maintenance of the suit instituted after his death by his children alone. We know of no law that would justify us in holding that a state of unconsciousness is the equivalent of death. If, as we hold, the right of action was in the father and the children jointly, and not separately, then the moment the wife and mother died he, though unconscious, had with the children a right which was joint. In *King* v. *Southern Railway Co.,* 126 *Ga.* 794 [55 S. E. 965, 8 L. R. A. (N. S.) 544], a mother brought suit for damages for permanent injuries to her daughter of fourteen-years, who was injured when a buggy in which the child and her

father were traveling was struck by a locomotive of the defendant. At the time of the injury to the daughter the cause of action arose in the father. He died within an hour after the occurrence. The court held that the cause of action did not survive to the mother of the child." Then, speaking of Mr. Justice Lumpkin's treatment of the *King* case, supra, said: "The learned Justice acknowledges the sternness of the rule he applies, but avers his impotency to change it. Says he: 'It may seem to be somewhat of a hardship that an injured child may be left with the mother, upon the death of the father, and that she can not sue for the previous injury to it; and the shortness of the time during which the father lived may make this view more striking. But we can not change the law on account of sympathy. If the fact that the father lived for an hour only would create a cause of action in the mother which did not otherwise exist, how would it be if he had lived for six hours, or a day, or a week, or a year, or indeed for any time less than that in which the child would become of age? In any of these supposed cases the same argument, that the mother was left in possession of an injured child (supposing the injury to be permanent as alleged), would equally apply. The difference would be one only of degree, not of kind.'" Then, after calling attention that at common law no one could maintain a civil action for damages on account of wrongful death, and tracing the history of Lord Campbell's act passed in 1846, and our adoption and adaptation of kindred measures, the court said: "The statute here involved expressly declares that in the situation here presented 'the husband and children shall sue jointly, and not separately.' It contains no exception as to the absence of the husband, refusal of the husband to join, sickness of the husband, or even the unconscious condition of the husband from the moment of the wife's injury until his own death; and we do not feel justified in reading any exception into the statute. Ita lex scripta est. Judge George, speaking for the Court of Appeals in *Denham* v. *Texas Co.*, 19 *Ga. App.* 662, 667 (91 S. E. 1070), in denying the right of children to sue separately for the negligent homicide of the mother, when the father was alive and refused to join in the suit, the law giving the right of action to the husband and children jointly, said: 'Our conclusion is influenced by the rule of strict construction always applied to the provisions of section 4424 [§ 105-1302 et seq.] of the present

Code. The statute is in derogation of common law, and is strictly construed. It is not remedial and subject to liberal construction. The right to maintain a civil action for a negligent homicide has been restricted by the repeated decisions of the Supreme Court of this State to those persons expressly named or by necessary implication included in the terms of the statute. Moreover, it must be remembered that the right of civil action for a negligent death is founded upon the theory of compensation. The beneficial interest in the life of the deceased is the basis upon which the right of recovery exists.'"

In *Hood* v. *Southern Ry. Co.*, supra, we find it stated, in reference to the statute involved: "The main purpose of the act of 1887 was to give the husband the right to *recover jointly* [italics supplied] with her children for the homicide of his wife," and it seems clear that it was in this sense that the court spoke when, as pointed out in the majority opinion in the present case, it was also said: "The only effect of this act, so far as children are concerned, is to lessen the amount which they could recover for the homicide of their mother, as under this act the full value of the life of the wife was to be shared by the husband and children jointly;" for it is further said, in reference to the language of this act, that it "will admit of no other construction than that the right of action given to the *husband and children* of the mother was joint," citing and quoting from *Thompson* v. *Ga. Ry. &c. Co.*, supra.

In the well-considered case of *Thompson* v. *Watson*, 186 *Ga.* 396 (supra), this court had under review, on certiorari from the Court of Appeals, the question whether there could be a recovery by four of five surviving children of a deceased father where his death had been "caused by the joint negligence" of the fifth child and her husband, and whether four of the five children only could recover against the joint tort-feasor, the husband of the fifth child. It was plainly held: "If a right or cause of action is given under the above statute to the 'children' of a deceased father as against the husband of the fifth child, for the homicide of the father, caused by the joint negligence of the fifth child and her husband, such right or cause of action is joint and not several, and is given to all of the children or none of them; and in a suit against the husband of the fifth child, the failure to join the fifth child as a party plain-

tiff, solely on the ground that she is jointly liable with her husband, defeats the action."

In this dissent extended quotation will not be made from the splendid discussion of this topic, but reference is made to the opinion for its discussion, for the history of this and the kindred sections of the Code, and the many cases cited; and because of its strong reasoning, and a belief that it is applicable to the case under consideration, the following portion of the opinion in that case is presented: "Thus in construing the statute we must approach it, not with the idea that it is unjust or harsh if it fails to give a right of action in certain instances, but on the contrary that the harshness lies in the fact that it gives a right of action in any instance. This may seem contrary to a humanitarian point of view; but it has always been a rule of construction of statutes that those in derogation of the common law, that is those which give rights not had under the common law, and those penal in nature must be limited strictly to the meaning of the language employed, and not extended beyond the plain and explicit terms of the statute. The legislature is presumed to act with knowledge of this rule of construction, and with that body only lies the right and privilege to grant rights not given under the common law and to extend and broaden any rights so granted. Such is not the function of the courts. The statute in plain terms purports to give a right of action to all of the children of the deceased, minor or sui juris. This to our mind plainly evidences an intent to give a right of action for the homicide of the father only when death is caused by the tort of one other than a member of the class designated. Lord Campbell, the author of the first death statute of England from which our present statute evolved, said that his act was passed for purpose of 'giving a compensation by action to the families of those killed *by the negligence of others.*' 12 Camp. Lives Ld. Ch. 265. Our first statute purported to give a right of action in any case where the deceased could have maintained an action had he lived. So did Lord Campbell's act. Our present statute contains no such provision. Regardless of the effect of the absence of this provision in our present statute, the children of the deceased are named as those to whom the right to recover is given, and it is given to them as a class, and not as separate individuals. There is nothing in the language of our statute as it presently stands that would tend

to show an intention on the part of the legislature to make any exception to that status. The right of action being expressly given to all excludes an intention on the part of the legislature to give a right of action to a part of the children against the other, but on the contrary evidences an intention to give a right of action to the children for the death of the father only in cases where the death is caused by the tortious act of one other than the children."

That the General Assembly has so understood the construction which this court has up to now consistently put upon these acts seems clear when we notice that in 1939 (Ga. L. 1939, p. 233), the very Code section under consideration was amended, obviously in the light of the decision in *Watson* v. *Thompson*, 185 *Ga.* 402 (supra), rendered in 1938, so as to have the statute read, as it now does, as follows: "The husband and/or child or children may recover for the homicide of the wife or mother, and those surviving at the time the action is brought shall sue jointly and not separately, with the right to recover the full value of the life of the decedent, as shown by the evidence, and with the right of survivorship as to said suit, if either shall die pending the action." It will be noted that this amendment has the effect of enlarging the rights of the surviving children by protecting against the contingency which barred them in *Watson* v. *Thompson,* supra, but does nothing whatever to relieve against the situation which in *Thompson* v. *Watson,* 186 *Ga.* 396, barred the right of less than all the surviving children, and held that all or none had vested in them the cause of action. This decision was also rendered in 1938, and we must assume that the General Assembly did not intend to work any change in this important matter, but acquiesced in such construction.

Again, it seems to me perfectly clear that if failure either by choice or by providence to join in the suit by one sharing the right jointly with the others will bar a claim, it ought to follow that when his negligence as a matter of law bars him from his joint right of recovery, all are likewise barred. If he can destroy the joint right of action by choice, he can do so by his guilty negligence. To say that a joint tort-feasor more guilty than his partner in negligence must join as coplaintiff with those not guilty in a suit against the joint tort-feasor is to cause their case to fall with his, just as it falls with his failure or refusal to sue. It seems unnecessary to discuss the other questions.