**Joel Rocky FULFORD and Elaine Fulford, Plaintiffs,**

v.

**ITT RAYONIER, INC., Defendant.**

Civ. A. No. 287–84.

United States District Court,
S.D. Georgia,
Brunswick Division.

Nov. 12, 1987.

Richard D. Phillips, Ludowici, Ga., for plaintiffs.

Kenneth R. Carswell, Jesup, Ga., for defendant.

## ORDER

ALAIMO, Chief Judge.

Plaintiffs are the parents of twin girls who were born alive but died within 12 hours of their birth. Defendant is the employer of plaintiff Elaine Fulford. Plaintiffs seek recovery for the value of the lives of their twins, alleging that Ms. Fulford was forced to continue strenuous physical work despite Rayonier's knowledge of her pregnancy. Defendant moves for summary judgment on defenses that Ms. Fulford assumed the risks of continued employment while pregnant; and that injury to the twins was an unforeseeable consequence of physical labor at the Rayonier wood mill.

Because genuine issues of material fact exist regarding the proximate cause of the twins' death, summary judgment will be denied.

### FACTS

Elaine Fulford commenced work for Rayonier on December 17, 1985, and was given permanent status on March 17, 1986. Her duties consisted primarily of wheelbarrowing materials, lifting saw blades and shoveling wood chips.

She was informed that she was pregnant on March 20, or thereabouts, by personnel of the local health clinic. On March 27 she had pains at work and, after completing her night shift, noticed vaginal bleeding. She checked into the Wayne Memorial Hospital on the late night/early morning of March 27/28. Her pregnancy was confirmed and she was confined to bed for three weeks. On April 16, she returned to work with a certificate from a Dr. Purser which indicated that there were no limitations on her work activities.

Ms. Fulford changed doctors in May, selecting the services of Drs. Leddy and Meguiar. On her initial visit, she was seen by a Nurse Practitioner who, according to plaintiff, told her to lift no more than 25 pounds.

According to Ms. Fulford, she relayed this information to the defendant, whereupon she was instructed to obtain written medical statements regarding her work limitations. According to plaintiff, there were communications between Dr. Leddy and a supervisor at Rayonier, Mr. Simmons, regarding work limitations. Although neither party has proferred documents relating to these communications, Ms. Fulford testified in deposition that Dr. Leddy requested a work description from Rayonier and that Simmons provided one. She testified that Simmons' description misrepresented the nature of her work, because it stated that she was not required to lift more than 25 pounds. She testified that she sought to have the description corrected.

Before her 4 p.m.—12 p.m. shift on June 14, Ms. Fulford presented to her foreman, Mr. Pittman, a letter from Dr. Meguiar stating that Ms. Fulford was carrying twins and that she should "be placed in a very light duty job status or placed on maternity leave at this time." As instructed by Mr. Pittman, she worked her shift that evening. Ms. Fulford was notified the following Monday that she was placed on maternity leave as of June 15.

Defendant contends that the only written notice regarding Ms. Fulford's pregnancy and work limitations were the notices of April 16 (certifying *un*restricted duties) and June 14 (advising maternity leave). However, defendant does not deny having knowledge as early as March that Ms. Fulford was pregnant. There is a notation dated May 23 by Dr. Leddy on Ms. Fulford's Prenatal Flow Record stating: "urged to quit smoking. Requests light duty @ work." There is no evidence, however, that this message was ever relayed to Rayonier.

Ms. Fulford was admitted to Wayne Memorial Hospital on June 19 due to amniotic rupture. She was transferred to the Medical College of Georgia and delivered twins, approximately one month prematurely, on July 8 at 10:50 a.m. and 10:51 a.m. Both babies had a streptococcus sepsis infection and died at 5:30 p.m. and 9:50 p.m. that same day.

The affidavit of Dr. Geiger states that the physical labor at the mill could be expected to cause premature membrane rupture and could have contributed to the death of the twins.

In a separate action, plaintiffs have alleged the negligence of Dr. Purser for failure to recommend proper physical limitations on activities in April, and Wayne Memorial Hospital for introducing the strep infection into Ms. Fulford through the use of an unsterile catheter.

In the instant action, plaintiffs seek to hold Rayonier liable for its allegedly negligent failure to respond to Ms. Fulford's requests for lighter duties and for misrepresenting the nature of those duties to medical personnel.

DISCUSSION

The parties have argued this summary judgment motion based on the relative duties of employers and employees embodied in Georgia's Labor Code. O.C.G.A. § 34–7–20 (care required by employer in maintaining safe workplace and machinery); O.C.G.A. § 34–7–23 (assumption of the risk of dangers by employees).

However, it appears from the pleadings and the prayers of plaintiffs that this action must be characterized as one for the wrongful deaths of the twin girls. O.C.G.A. § 19–7–1. Plaintiffs seek damages equal to the full value of the lives of the twins—the measure of damages recoverable under Georgia's wrongful death act. O.C.G.A. §§ 51–4–1 through 51–4–5. As well, plaintiffs have omitted all references to compensation for their own pain and suffering or physical injuries, which is inconsistent with a personal cause of action for their own injuries. Consequently, the appropriate focus in this case is not the duties owed between employer and employ-ee, but the duties owed by the defendant to the deceased.

Georgia courts were in the vanguard in recognizing infants' causes of action for prenatal torts, and the maintenance of wrongful death actions by survivors of infants receiving prenatal injuries. See McAuley v. Wills, 251 Ga. 3, 303 S.E.2d 258 (1983) (recognizing a cause of action in wrongful death for injuries to the mother sustained prior to conception of the decedent child; and distinguishing between the mother's personal action and the parents' wrongful death action); Hornbuckle v. Plantation Pipe Line Co., 212 Ga. 504, 93 S.E.2d 727 (1956) (prenatal tort; but a surviving injured infant); Tucker v. Howard L. Carmichael & Sons, Inc., 208 Ga. 201, 65 S.E.2d 909 (1951) (prenatal tort; surviving child); Fallaw v. Hobbs, 113 Ga.App. 181, 147 S.E.2d 517 (1966) (same); Porter v. Lassiter, 91 Ga.App. 712, 87 S.E.2d 100 (1954) (recognizing a wrongful death suit where the infant was born dead, but was "quick" at the time of the injury); see generally 62 Am.Jur.2d, Prenatal Injuries §§ 12 & 13.

■ In personal injury actions by a child, the contributory negligence of the parent cannot be imputed to the child, O.C.G.A. § 51–2–1(b); Fallaw, supra; however, in wrongful death actions under O.C.G.A. § 19–7–1, the contributory negligence of a parent generally defeats recovery in that parent if equal to or more than the negligence of a defendant. Woodham v. Powell, 61 Ga.App. 760, 7 S.E.2d 573 (1940).

■ At the same time, the contributory negligence of one beneficiary in a wrongful death action does not defeat recovery when the right to recovery exists in multiple beneficiaries. Happy Valley Farms, Inc. v. Wilson, 192 Ga. 830, 16 S.E.2d 720 (1941). Under Georgia law, the cause of action for the death of a child belongs to both parents jointly. O.C.G.A. § 19–7–1(c)(2)(A). Consequently, the allegations of contributory negligence or assumption of the risk by Ms. Fulford will not defeat recovery for Mr. Fulford. See generally Annot. Negligence of One Par-

*ent Contributing to Injury or Death of Child as Barring or Reducing Damages by Other Parent,* 26 A.L.R. 4th 396, 407 & 415.

Accordingly, defendant's motion for summary judgment is hereby DENIED.